**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)**

| | | |
|---|---|---|
| **JONATHAN FRANCES, et al.** | * | |
| | * | |
| **Plaintiffs,** | * | |
| | * | |
| **v.** | * | **Civil No. PJM 05-981** |
| | * | |
| **WENDY SCHUDRICH, et al.,** | * | |
| | * | |
| **Defendants.** | * | |

**<u>OPINION</u>**

Plaintiffs Jonathan and Dana Frances have submitted two motions: (1) a Motion for Reconsideration of the Court's Dismissal of Plaintiffs' Invasion of Privacy/ Unreasonable Disclosure Cause of Action; and (2) a Motion to Dismiss the Schudrich Defendants' Counterclaim. The Court will DENY the Motion for Reconsideration and DENY the Motion to Dismiss.

**I.**

The Court considers the Plaintiffs' Motion for Reconsideration of the Court's Dismissal of Plaintiffs' Invasion of Privacy/ Unreasonable Disclosure Cause of Action.

In Count IV of their First Amended Complaint, Plaintiffs raised three distinct invasion of privacy claims: (1) false light; (2) intrusion upon seclusion; and (3) unreasonable disclosure of private facts. First Am. Compl. ¶ 97. On July 26, 2005, the Carmeli and Schudrich Defendants filed a joint Motion to Dismiss, and, on September 19, 2005, the Court heard oral arguments thereon. At the close of the hearing, the Court denied the Motion to Dismiss as to the false light claim, but dismissed the intrusion upon seclusion and unreasonable disclosure claims. *See* Paper

No. 40.  The Court concluded that unreasonable disclosure does not embrace the communication

of false statements, a proposition Plaintiffs did not and do not dispute.  Instead, in their Motion

for Reconsideration, Plaintiffs' contention is that in dismissing the entire claim, the Court

overlooked two allegations consisting of true statements: (1) that Wendy Schudrich

communicated to Ron Offer that Dana Frances had been abused as a child; and (2) that Wendy

and Alex Schudrich told Doris Schudrich that "every member of the Frances family was being

investigated for sexual abuse." *See* First Am. Compl. ¶¶ 71, 99; Bill of Particulars 4.  Defendants

argue that the Motion is untimely, but would fail on the merits in any event.  The Court agrees.

Reconsideration pursuant to Rule 59(e) is "an extraordinary remedy which should be

used sparingly." *McLaughlin v. Murphy*, 372 F. Supp. 2d 465, 476 (D. Md. 2004) (*quoting Pac.

Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)); *see also Microbix

Biosystems, Inc. v. Biowhittaker, Inc.*, 184 F. Supp. 2d 434, 436 (D. Md. 2000) ("A motion for

reconsideration is granted only in limited circumstances.").  A motion for reconsideration "is not

a license to reargue the merits or present new evidence." *Royal Ins. Co. v. Miles & Stockbridge,

P.C.*, 142 F. Supp. 2d 676, 677 n.1 (D. Md. 2001) (*citing RGI, Inc. v. Unified Indus., Inc.*, 963

F.2d 658 (4th Cir. 1992)).  Nor is reconsideration an appropriate vehicle to "raise arguments

which could, and should, have been made" prior to the ruling to be reconsidered.  *Microbix*, 184

F. Supp. 2d at 436.  Courts will amend an earlier ruling pursuant to Rule 59(e) in only three

situations: "(1) to accommodate an intervening change in controlling law; (2) to account for new

evidence not [previously] available. . .; or (3) to correct a clear error *of law* or prevent manifest

injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (emphasis added).

Plaintiffs' argument for reconsideration does not fit into any of the three categories articulated in *Braxton*.  At a minimum, it was incumbent on Plaintiffs' Counsel to identify at the motions hearing the two purportedly true statements contained in the pleadings.  The Court's review of the transcript confirms that oral argument was devoted entirely to Plaintiffs' contention that false statements could serve as the basis of an unreasonable disclosure claim.  Tr. Mot. Hr'g 58:12-61:8, Sept. 19, 2005.  Despite the time constraints all parties at the motions hearing were subject to, Counsel had an opportunity to raise the argument it puts forth now.  On this basis alone, the Court has sufficient grounds to deny the Motion for Reconsideration.

However, even if Counsel's failure to raise those claims at the hearing is excused, the claim fails on the merits.  Maryland embraces the Restatement (Second) of Torts § 652D definition of invasion of privacy which provides:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that:
> (a) would be highly offensive to a reasonable person, and
> (b) is not of a legitimate concern to the public.

Restatement (Second) of Torts § 652D (1977), *accord Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101, 1118 (Md. App.), *cert. denied*, 508 A.2d 488 (1986).  To establish "publicity," a plaintiff must demonstrate that the private fact has been "communicat[ed] to the public at large, or to so many persons that the matter must be substantially certain to become one of public knowledge."  Restatement (Second) of Torts § 652D cmt. a; *accord Pemberton*, 502 A.2d at 1118.

The First Amended Complaint does not claim that Defendants communicated the allegedly private facts to "the public at large."  Instead, Plaintiffs allege that Defendants told two

people that Dana Frances had been abused as a child.  *See* First Am. Compl. ¶¶ 71, 99; Bill of

Particulars 12.  As for the statement that Plaintiffs were the subject of a sexual abuse

investigation, Defendants allegedly communicated that information to only one person, Doris

Schudrich.[1]  *See* Bill of Particulars 4.  These allegations are insufficient to constitute "publicity"

as required by Maryland law.  *Pemberton*, 502 A.2d at 1118 ("[I]t is not an invasion of the right

to privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's

private life to a single person or even to a small group of persons." (*quoting* Restatement

(Second) of Torts § 652D cmt. a)).

    Accordingly, the Motion for Reconsideration is DENIED.

## II.

    Defendants argue, in response to Plaintiffs' Motion to Dismiss the Schudrich Defendants'

Counterclaim, that they have fairly pleaded the elements of their Counterclaims.  Again,

Defendants have the better part of the argument.[2]

    In ruling on a 12(b)(6) motion, the court must accept the allegations in the Counterclaim

as true.  *Popoola v. MD-Indiv. Practice Assoc., Inc.*, 230 F.R.D. 424, 427 (D. Md. 2005).  A

motion to dismiss will not be granted "unless it appears beyond doubt that the [counterclaimants]

---

[1]  In fact, in Paragraph 65 of the First Amended Complaint, the Franceses acknowledge that they themselves were also communicating the same information.

[2]  The Court will not consider the Franceses' affidavits and will not at this time entertain their argument as to bad faith.  There appears to be a clear factual dispute about the allegation contained in Paragraph 15 of the Counterclaim, the truth or falsity of which will be aired at trial. If the Court ultimately determines that this allegation was made in bad faith, appropriate action may be taken at that time.

can prove no set of facts in support of [their] claim which would entitle [them] to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

The Franceses contend in their motion that the Schudrichs' defamation claim should be dismissed for five reasons: (1) it is barred by the one-year statute of limitations[3]; (2) the Schudrichs did not plead this claim with requisite specificity; (3) the allegedly defamatory statements are related to judicial proceedings and thus absolutely privileged; (4) the allegedly defamatory statements are conditionally privileged under the common-law "right to respond"; and (5) the Schudrichs did not plead all the required elements of defamation.

The Franceses also contend that the Schudrichs' unreasonable disclosure claim should be dismissed for three reasons: (1) the Schudrich parents lack standing to assert claims based on alleged wrongs to their children who are not named in the Counterclaim; (2) the Schudrichs failed to plead that the alleged publicity would be "highly offensive to a reasonable person"; and (3) publication of the fact that the Schudrich children participated as witnesses in a sexual abuse investigation is not "highly offensive to a reasonable person."

### A.

In Maryland, the statute of limitations for the filing of defamation claims is one year. Md. Code Ann., Cts. & Jud. Proc. § 5-105.  If, however, a defamation claim is made as a compulsory counterclaim, it will relate back to the date of the filing of the complaint.

---

[3]  The Franceses initially argued in their Motion to Dismiss that the invasion of privacy claims (Counts II and III) were also time-barred under a one-year statute of limitations.  In Maryland, however, the limitations period for invasion of privacy claims is three years.  *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101.  The earliest event described in the Counterclaim occurred in 2003.  Even if an invasion of privacy cause of action accrued on January 1, 2003, the limitations would not have run by the time the Counterclaim was filed on October 11, 2005.

*Kirkpatrick v. Lenoir County Bd. of Education*, 216 F.3d 380, 388 (4th Cir. 2000).  A
compulsory counterclaim is one that "arises out of the transaction or occurrence that is the
subject matter of the opposing party's claim . . . ."  Fed. R. Civ. P. 13(a).  The Fourth Circuit's
standard for determining whether a claim is compulsory comprises four separate considerations:

> (1) Are the issues of fact and law raised in the claim and counterclaim largely the
> same?  (2) Would res judicata bar a subsequent suit on the party's counterclaim,
> absent the compulsory counterclaim rule?  (3) Will substantially the
> same evidence support or refute the claim as well as the counterclaim? and (4) Is there
> any logical relationship between the claim and counterclaim?

*Harrison v.  Grass*, 304 F. Supp. 2d 710, 713 (D. Md. 2004) (*quoting Painter v. Harvey*, 863
F.2d 329, 331 (4th Cir. 1988)).  To find that a counterclaim is compulsory, the court need not
answer each question in the affirmative.  *Painter*, 863 F.2d at 331.  In fact, when the "same
evidence" inquiry is satisfied, a counterclaim is likely compulsory.  *Id*. at 332.

The Schudrichs' counterclaims satisfy all of the Fourth Circuit requirements.  First, it is
clear that the legal and factual issues raised in the claim and counterclaims are largely the same.
Both Plaintiffs and Defendants submit claims for defamation and invasion of privacy flowing
from the same underlying sexual abuse allegations.  Second, res judicata would certainly bar a
subsequent suit on the Schudrichs' counterclaims.[4]  Third, both the claims and counterclaims

---

[4] "Under Maryland law, the elements of res judicata, or claim preclusion, are: (1) that the
parties in the present litigation are the same or in privity with the parties to the earlier dispute;
(2) that the claim presented in the current action is identical to the one determined in the prior
adjudication; and (3) that there has been a final judgment on the merits."  *Colandrea v. Wilde
Lake Community Ass'n*, 761 A.2d 899, 910 (Md. 2000).  Maryland employs the "transaction test"
set forth in the Restatement (Second) of Judgments § 24 to determine whether claims are
identical for res judicata purposes.  *Id.* at 908.  "The present trend is to see claim in factual terms
and to make it coterminous with the transaction, regardless of the number of substantive theories,
or variant forms of relief flowing from those theories, that may be available to the plaintiff . . . ."
Restatement (Second) of Judgments § 24 cmt. a.
    The parties in the Schudrich Defendants' Counterclaim are the same as those in the

will require substantial evidence regarding the original sexual abuse allegations, the

Montgomery County investigation of those allegations, and conversations with neighbors and

other parties.  Fourth, there is a clear logical relationship between the claims and the

counterclaims–they are essentially opposite sides of the same coin.  Both sets of claims concern

a series of responses by both parties to the initial sexual abuse allegations.

The Court thus concludes that the Schudrichs' counterclaims are compulsory.  As such,

the defamation claims relate back to April 11, 2005, the date on which the Franceses filed their

Complaint.  Because the Schudrichs have properly pled specific allegations of defamation

arising after April 11, 2004, their counterclaims are not barred by the one-year limitations

period.[5]

The Franceses' second argument as to the defamation claim is that it lacks specificity.

Defendants and the Court disagree.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Nevertheless, the complaint or counterclaim must "give the defendant fair notice of what the

---

Franceses' original complaint.  Additionally, both the Franceses' original claim and the
Counterclaim arise from the disputed allegations of sexual abuse and communications related to
those allegations.

[5] The Court is aware that the Schudrichs have actually pled allegations of defamation
arising "in the spring of 2004."  *See, e.g.,* Counterclaim ¶ 15.  Whether part or all of the
allegations will survive a motion for summary judgment remains to be seen.  If–prior to April 11,
2004–the Schudrichs were aware of certain defamatory statements, it is possible that claims
based on those statements would be barred by the statute of limitations.  The Court, however,
declines to make such a determination at this stage.

plaintiff's claim is and the grounds upon which it rests," *Conley*, 355 U.S. at 48, and must be "detailed and informative enough to enable the defendant to respond." 5 Wright & Miller, Federal Practice and Procedure § 1215, at 193 (3d ed. 2004).

In defamation actions, courts typically require that the complainant "plead the time, place, content, speaker, and listener of the alleged defamatory matter." *Wiggins v. Philip Morris, Inc.*, 853 F. Supp. 458, 465 (D.D.C. 1994); *see also Schoonfield v. Baltimore*, 399 F. Supp. 1068, 1090 n.29 (D. Md. 1975) ("[I]t should be noted that although the Federal Rules of Civil Procedure have liberalized pleading requirements, courts have traditionally required in actions of libel or slander that the allegedly defamatory matter be set forth *in haec verba*.").

The Schudrich Defendants' claim is based on four sets of defamatory statements. *See* Counterclaim ¶¶ 43-46. Each is supported by descriptions of the speaker, auditor, time, place and content of the allegedly defamatory statements. *See, e.g.,* Counterclaim ¶¶ 15, 25, 26, 33. The Court believes that the Franceses have notice of the defamation claim sufficient to permit them to prepare a thorough and proper response. As the factual underpinnings to each statement become more clear, they may be tested either through summary judgment or at trial.

The Franceses' third argument is that any allegedly defamatory statements they made are absolutely privileged because of their connection to judicial proceedings. Again, Defendants except, again the Court agrees with Defendants.

Maryland recognizes an absolute privilege for defamatory statements made by a witness during the course of a trial. *Adams v. Peck*, 415 A.2d 292 (Md. 1980). It is well settled that this privilege includes statements made in pleadings and other documents filed in, or prepared for possible filing in, judicial proceedings. *See, e.g., Miner v. Novotny*, 498 A.2d 269 (Md. 1985)

(filing of police brutality complaint against deputy sheriff); *Adams*, 415 A.2d at 296

(psychiatrist's report prepared at request of wife's attorney in custody proceedings). A party and

his or her attorney have an absolute privilege to make defamatory statements in the course of a

judicial proceeding if the statements "are rationally related to and reference the underlying

litigation." *Woodruff v. Trepel*, 725 A.2d 612, 619 (Md. App. 1999); *see also* Restatement

(Second) of Torts §586 cmt. e (An attorney's comments will be privileged even when made

before commencement of a proceeding, provided the "communication has some relation to a

proceeding that is contemplated in good faith and under serious consideration.").

      The scope of this privilege, however, is not unlimited. In *Woodruff*, the Court of Special

Appeals indicated that "for the privilege to apply, the statement must be made to further a

purpose falling within the public interest underlying the privilege, i.e. the unfettered disclosure

of information needed for a judicial or quasi-judicial decision-making process." *Woodruff*, 725

A.2d at 621.[6] "The scope of the privilege is restricted to communications such as those made

between an attorney and his client, or in the examination of witnesses by counsel, or in

statements made by counsel to the court or jury." *Kennedy v. Cannon*, 182 A.2d 54, 58 (Md.

1962) (*citing* Restatement (Second) of Torts § 586 cmts. a and c). Thus, defamatory statements

made by an attorney to "persons in no way connected with the proceeding" are not privileged.

*Id.* at 58.

---

    [6] Thus, Mrs. Woodruff's lawyer was deemed privileged to send Mr. Woodruff a defamatory letter accusing him of child abuse, because the letter's contents related to an ongoing custody proceeding. *Woodruff*, 725 A.2d at 618-619. Mrs. Woodruff, however, was not deemed privileged to send a copy of the letter to her child's school principal, because "the school [was] not a tribunal and [was] not engaged in a judicial or quasi-judicial role." *Id*. at 621.

Plaintiffs contend that any statements made by them after commencement of their suit which are related to this case are absolutely privileged. This reads the judicial proceedings privilege too broadly. The Schudrichs' Counterclaim alleges multiple extrajudicial statements Plaintiffs supposedly made to the press and at community meetings. Such statements are not examples of "the unfettered disclosure of information needed for a judicial or quasi-judicial decision-making process." *Woodruff*, 725 A.2d at 621. To the extent they were made, Plaintiffs' statements seem to have been directed at clearing their name in the community. While perhaps protected by a conditional privilege, such statements are not protected by an absolute one.

Fourth, the Franceses assert that they have a conditional privilege to publish defamatory statements in order to defend their reputation against the Schudrichs' allegedly defamatory attacks, the Court in its December 6, 2005 ruling having explicitly recognized the Franceses' common-law right of reply. *See Foretich v. Capital Cities/ABC. Inc.*, 37 F.3d 1541, 1559 (4th Cir. 1994).

Nonetheless, a party may lose this conditional privilege if he or she abuses it. *Leese v. Baltimore County*, 497 A.2d 159, 176 (Md. App. 1985), *cert. denied*, 305 Md. 106, 501 A.2d 845 (1985), *overruled on other grounds*, *Harford County v. Town of Bel Air*, 348 Md. 363, 704 A.2d 421 (1998). A conditional privilege may be lost if the party claiming the privilege has acted with constitutional malice or "for a purpose other than furthering the applicable societal interest." *Woodruff*, 725 A.2d at 622 (*citing McDermott v. Hughley*, 561 A.2d 1038, 1047 (Md. 1989)). Malice exists where a party has acted with "knowledge of falsity or reckless disregard for truth." *McDermott*, 561 A.2d at 1047 (*citing Marchesi v. Franchino*, 387 A.2d 1129 (Md. 1978)). In the case of the conditionally privileged right of reply, abuse occurs if the reply includes

irrelevant or non-responsive matter, is disproportionate to the initial injury, or is addressed to an overly-broad audience. *Foretich*, 37 F.3d at 1559.  The burden of proving such abuse is on the complaining party. *Id.*

But the case is presently before the Court in a motion to dismiss.  At this stage, well-pled allegations of abuse of a conditional privilege suffice to overcome an assertion of the privilege. *Woodruff*, 725 A.2d at 623.  In their Counterclaim the Schudrichs have alleged that the Franceses published defamatory statements about them to newspaper reporters in multiple states. *See* Counterclaim ¶¶ 29-35.  A jury could determine from these allegations that the Franceses abused their conditional privilege by publicizing their response too broadly.  Accordingly, the Court cannot properly dismiss the counterclaims of Defendants based on the conditional privilege asserted by Plaintiffs.

The Franceses' final argument in favor of dismissing the Schudrichs' defamation claim is that the Schudrichs have not pled all of the required elements of a defamation cause of action. This argument is without merit.  A plaintiff must plead four elements of a defamation cause of action in order to establish a prima facie case: "(1) that the defendant made a defamatory statement regarding the plaintiff to a third person; (2) that the statement was false; (3) that the defendant was legally at fault in making the statement; and (4) that the plaintiff suffered harm thereby." *Holt v.  Camus*, 128 F. Supp. 2d 812, 815 (D. Md. 1999) (*citing Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001).  The Court finds that the Schudrich Defendants have done this. *See* Counterclaim ¶¶ 42-50.

**B.**

As to Count III of the Counterclaim, which alleges unreasonable disclosure of private facts, the Franceses assert three arguments. All three arguments fail.

First, the Franceses contend that Count III should be dismissed because the Schudrich parents lack standing to assert claims for invasion of privacy concerning their children, who are not named as parties in the suit. This is simply wrong. The Schudrichs can certainly claim a right to privacy that encompasses the "intimate details" of their family life, including the participation of their children as witnesses in a sexual abuse investigation. *See* Restatement (Second) of Torts § 652D cmt. b.

The Franceses also contend that Count III should be dismissed because the Schudrichs failed to plead that the alleged publicity would be highly offensive to a reasonable person, and because the participation of an individual as "a witness in a sexual abuse investigation" is not highly offensive as a matter of law. Neither argument has merit. Though the Schudrichs may not have pled the exact terminology, they have unquestionably alleged facts that a jury could regard as "highly offensive to a reasonable person." *See, e.g*., ¶ 69 ("The fact that one's children are *complaining* witnesses in a sexual abuse investigation is one that a reasonable person would consider private and would not publish to the community at large.") (emphasis added).

## III.

For the foregoing reasons, the Court DENIES the Franceses' Motion for Reconsideration of the Court's Dismissal of Plaintiffs' Invasion of Privacy/ Unreasonable Disclosure Cause of Action, and DENIES the Motion to Dismiss the Schudrich Defendants' Counterclaim.

A separate Order will be ENTERED.


_____
/s/
**PETER J. MESSITTE**
August 10, 2006            **UNITED STATES DISTRICT JUDGE**